UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:06cv1671 (PCD) |
| | : | |
| ADELA QUITO, SANDRA RICHARDS | : | |
| and OFFICER RICHARD GASPARINO, | : | |
|     Defendants. | : | |

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In its Complaint filed on October 23, 2006, Plaintiff Allstate Insurance Company ("Plaintiff" or "Allstate") seeks a declaratory judgment determining that Plaintiff owes no duty to defend or indemnify Adela Quito or anyone who may gain a judgment against her with regard to the claims alleged in the lawsuit against her brought by Sandra Richards ("Richards lawsuit"). On May 30, 2007, Plaintiff filed the instant Motion for Summary Judgment [Doc. No. 24], asking this Court to enter judgment in its favor on its Complaint for Declaratory Judgment. Defendants failed to respond to Plaintiff's motion. Upon review of Plaintiff's motion and the applicable law, the Court hereby **grants** Plaintiff's motion.

## I. BACKGROUND[1]

This action arises out of a civil rights lawsuit filed, pursuant to 42 U.S.C. §§ 1983 and 1988, by defendant Sandra Richards against defendants Adela Quito, insured by Plaintiff Allstate, and Richard Gasparino on April 24, 2006 (the "underlying lawsuit"). In the underlying

---

[1] In the absence of a response or denial by Defendants, the facts set forth in Plaintiff's Local Rule 56(a)(1) Statement are deemed admitted. See D. Conn. L. Civ. R. 56(a); Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002); SEC v. Global Telecom Servs. L.L.C., 325 F. Supp. 2d 94, 109 (D. Conn. 2004); Root v. Liston, 363 F. Supp. 2d 190, 191 n.1 (D. Conn. 2005); Martin v. Town of Westport, 329 F. Supp. 2d 318, 323 n.1 (D. Conn. 2004). The facts that follow are derived entirely from Plaintiff's Local Rule 56(a)(1) Statement.

lawsuit, Richards alleges that Quito, on January 10, 2004, "falsely and maliciously stated to . . . Gasparino that [Richards] had committed crimes," causing Gasparino to arrest Richards, on that same day, without a warrant and/or probable cause in violation of her Fourth Amendment rights.[2] The underlying lawsuit, therefore, sets forth a malicious prosecution claim against Quito and Fourth Amendment claims against Gasparino. Richards claims that she was injured by being taken into police custody, held in a cell, required to post bond, hire a lawyer and appear in court, the fact that she temporarily lost custody of her children, and alleged emotional distress. Richards is seeking compensatory damages, punitive damages and costs from Quito.

Allstate issued two insurance policies to Quito, both of which were in effect at the time of the events alleged in the underlying lawsuit. First, Allstate issued Quito a Deluxe Homeowners Policy, No. 025508811, with a policy period of September 19, 2003 through September 19, 2004, covering the property located at 70 Alvord Place in Stamford, Connecticut (the "rental policy"). Second, Allstate issued to Quito a Deluxe Homeowners Policy, No. 919253571, with a policy period of October 6, 2003 through October 6, 2004, covering the property located at 110 Stratfield Road in Fairfield, Connecticut (the "residence policy").

The rental and residence policies define the following pertinent terms as follows:

1. **'You'** or **'your'** — means the person named on the Policy Declarations as the named insured and that person's resident spouse.

4. **'Bodily Injury'** — means physical harm to the body, including sickness or disease, and resulting death, except that **bodily harm** does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);

---

[2] According to Richards' complaint, the charges against her were nolled by the Assistant State's Attorney on December 10, 2004.

> d) AIDS Related Complex (ARC);
> e) Human Immunodeficiency Virus (HIV)
>
> or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.
>
> 9. **'Occurrence'** — means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.
>
> 21. **'Property damage'** — means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

The rental and residence policies contain the following provision under the heading "Family Liability and Guest Medical Protection":

> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.
>
> We may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

Finally, the rental and residence policies also contain the following "intentional act exclusion," under the same heading:

> **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an **insured person**. This exclusion applies even if:
>
> a) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
>
> b) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such **insured person** is

actually charged with, or convicted of a crime.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A material fact is one which "might affect the outcome of the suit under the governing law" and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). The moving party bears the burden of establishing that summary judgment is appropriate. Anderson, 477 U.S. at 255.

In determining whether summary judgment is appropriate, the court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted). Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If

reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

## III. DISCUSSION

Plaintiff claims that it is entitled to a declaratory judgment that it has no duty to indemnify its insured, Adela Quito, in the underlying lawsuit giving rise to this declaratory judgment action. Specifically, Plaintiff argues that the allegations of the underlying lawsuit, asserting a claim of malicious prosecution against Ms. Quito, do not allege "bodily injury" or "property damage" caused by an "occurrence," as required by the Allstate rental and residence policies at issue. Plaintiff also contends that the claims are excluded by the "intentional act exclusion." (See Pl.'s Mem. Supp. Mot. Summ. J. 1-2.)

In Connecticut, insurance policies are construed according to general rules of contract interpretation, and as such, must be enforced in accordance with the parties' intent, as derived from the plain and ordinary meaning of the policy's terms. Ohio Cas. Ins. Co. v. Dentek, Inc., 283 F. Supp. 2d 655, 659 (D. Conn. 2003). If a provision in an insurance policy is susceptible of two or more reasonable interpretations, that ambiguity will be resolved in favor of the insured; however, when the language is clear, no such construction is applied. Id.; accord Western World Ins. Co. v. Peters, 989 F. Supp. 188, 191 (D. Conn. 1997). The fact that the parties advance

5

different interpretations of the policy language does not necessitate a conclusion that the language is ambiguous. Ohio Cas. Ins. Co., 283 F. Supp. 2d at 659. Rather, "[i]t is the function of the court to construe the provisions of the insurance contract and, if no material facts are at issue, the question of whether coverage exists is a question of law that is appropriately decided on a motion for summary judgment." Peerless Ins. Co. v. Disla, 999 F. Supp. 261, 263 (D. Conn. 1998) (citing Jurrius v. Maccabees Mut. Life Ins. Co., 587 F. Supp. 1301, 1305 (D. Conn. 1984)); see also American Home Assur. Co. v. Abrams, 69 F. Supp. 2d 339, 348 (D. Conn. 1999) ("Generally, the interpretation of an insurance contract is a matter of law to be decided by the Court.") (citing Imperial Cas. & Indem. Co. v. State, 246 Conn. 313, 322 & n.6, 714 A.2d 1230, 1236 (1998)).

Under Connecticut law, an insurer's duty to defend the insured is broader than its duty to indemnify, encompassing any claim where "an allegation of the complaint falls even possibly within the coverage" of the policy or policies at issue. Stamford Wallpaper Co. v. TIG Ins., 138 F.3d 75, 79 (2d Cir. 1998); see also Moore v. Continental Cas. Co., 252 Conn. 405, 409, 746 A.2d 1252 (2000) ("The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage."). The duty to indemnify, in contrast, arises only if "the evidence adduced at trial establishes that the conduct actually was covered by the policy." DaCruz v. State Farm Fire & Cas. Co., 268 Conn. 675, 688, 846 A.2d 849 (2004) (citations omitted). The existence of a duty to defend is based solely on the information and allegations contained "within the four corners of the complaint," Stamford Wallpaper Co., 138 F.3d at 79, and there is no duty to defend "if the complaint alleges a liability

which the policy does not cover." Peerless Ins. Co., 999 F. Supp. at 263 (citing Smedley Co. v. Employers Mut. Liability Ins. Co., 143 Conn. 510, 516-17, 123 A.2d 755 (1956)). Because the duty to defend is broader than the duty to indemnify, where there is no duty to defend, there can be no duty to indemnify. DaCruz v. State Farm Fire & Cas. Co., 268 Conn. 675, 688, 846 A.2d 849 (2004).

    A.    **"Bodily Injury"**

Plaintiff first argues that it has no duty to indemnify Ms. Quito in the underlying lawsuit because the allegations of that lawsuit, asserting a claim of malicious prosecution, do not allege "bodily injury." The provision in question provides that "**Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies." "Bodily harm," for purposes of the policies at issue, is defined to mean "physical harm to the body, including sickness or disease, and resulting death." The claim against Quito in the underlying lawsuit alleges only that "Adela Quito falsely and maliciously stated to defendant Gasparino that [Richards] had committed crimes at 70 Alvord Lane," and that such actions were the proximate cause of Richards being "taken into police custody, held in a cell, required to post bond, required to hire a lawyer, required to appear in court on numerous occasions, temporarily lost custody of her children and suffered emotional distress."

The claim at issue does not allege any "physical harm to the body," as required to bring the claim within the coverage of the Allstate policies. The Connecticut Supreme Court, following "the majority of jurisdictions that have considered this question," has held that emotional distress unaccompanied by physical harm does not fall within the definition of "bodily

injury," as used in an insurance policy similar to the one in question. Moore v. Continental Cas. Co., 252 Conn. 405, 411-12, 746 A.2d 1252 (2000). As in Moore, the policy in question in this case appears to use the word "bodily" in its ordinary sense, i.e., suggesting "something physical and corporeal, as opposed to something purely emotional." Id. at 410. Moore also recognized that "emotional distress ordinarily might be accompanied by some physical manifestations, such as an altered heart rate and altered blood pressure," but held that this does not mean that "bodily harm" or "bodily injury," as used in the insurance policy, encompasses the alleged emotional distress. Id. at 415 ("The question in this case is the legal meaning of 'bodily injury' as defined in the policy. It is not the medical or scientific question of the degree to which the mind and the body affect each other.").

There is no claim for bodily injury, or physical harm to the body, alleged in the underlying lawsuit. The injuries, alleged to have been caused by Quito's making of false and malicious statements, are purely emotional ones and intangible losses not involving physical harm to the body. As such, they do not fall within the residence and rental policies' definition of "bodily injury."

### B. "Property Damage"

The policies at issue define "property damage" as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." Under the clear and ordinary meaning of this term, as defined in the contract, there is no allegation in the underlying lawsuit of any physical injury to or destruction of tangible property. Even the allegations of financial loss, i.e., of having to post bond and hire a lawyer, do not fit within the policies' definition of property damage. See Williams Ford, Inc. v. Hartford Courant

8

Co., 232 Conn. 559, 581, 657 A.2d 212 (1995) ("'property damage' does not include purely commercial losses, unaccompanied by damages to or loss of the use of some tangible property"). Accordingly, the harm alleged does not fall within the residence and rental policies' definition of property damage.

Because the underlying lawsuit does not allege "bodily injury" or "property damage," as required by the Allstate policies at issue, Allstate has no duty to defend or indemnify Adela Quito in the underlying lawsuit. Accordingly, the Court need not address Plaintiff's additional arguments that the underlying lawsuit does not allege injury or damage caused by an "occurrence," and that the claims at issue are excluded by the "intentional act exclusion."

## IV.  CONCLUSION

For the foregoing reasons and absent objection, Plaintiff's Motion for Summary Judgment [Doc. No. 24] is **granted**. The following declaratory judgment shall enter: Plaintiff Allstate has no duty, under Deluxe Homeowners Policy, No. 025508811, and Deluxe Homeowners Policy, No. 919253571, to defend Defendant Adela Quito in the underlying lawsuit and no duty to indemnify Defendant Adela Quito or any party who main gain a judgment against her in the underlying lawsuit. Judgment will enter in Plaintiff's favor and the clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, July  29 , 2007.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court